# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TINA MICHELLE RHODES,<br><br>               Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br><br>               Defendant. | Case No. 4:18-cv-00986-NKL |

## ORDER

Plaintiff Tina M. Rhodes seeks review of Defendant's decision denying her claim under Title XVI of the Social Security Act for Supplemental Security Income benefits. For the reasons set forth below, the Court affirms the Administrative Law Judge's decision.

## I. BACKGROUND

On September 8, 2015, at the age of 23, Ms. Rhodes filed for Supplemental Security Income benefits, alleging an onset date of December 21, 2010, which was later amended at the hearing to the date of application, September 8, 2015. Tr. 17.

The Administrative Law Judge (ALJ) concluded after a hearing that Ms. Rhodes had the following severe impairments: pain syndrome, degenerative disc disease, asthma, sphincter of Oddi dysfunction, migraines, and mental disorders variously diagnosed as bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder. Tr. 20. The ALJ found that Ms. Rhodes had the residual functional capacity (RFC) to perform light work, as defined by 20 C.F.R. 416.967(b), with the following exceptions:

> She can occasionally climb stairs and ramps but never ladders or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She cannot perform jobs in

> bright light, further defined as stage lighting, strobe lighting, paint booth lighting, and bright sunlight. She must avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, level 5 noise, and vibrations, further defining vibrations as performing jobs such as operating jackhammers and other equipment where the operator is significantly vibrated. She must avoid all exposure to hazards of heights and machinery. She can understand, remember, and carry out simple instructions and non-detailed tasks, further defined as SVP 2 work and below. She can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others, including the public, is infrequent. She can adapt to routine/simple work changes. She can perform repetitive work according to set procedures, sequence, or pace.

Tr. 23. Based on the testimony of the vocational expert (VE), the ALJ concluded that given Ms. Rhodes' RFC, she would be able to perform the requirements of representative occupations such as a small products assembler or electrical accessory assembler. Tr. 29. Therefore, the ALJ determined Ms. Rhodes was able to perform work that exists in significant numbers in the national economy and was not "disabled" as defined by the Social Security Act. Tr. 30. The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II. LEGAL STANDARD

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Id*. The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id*. "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court

must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

**III.     DISCUSSION**

Ms. Rhodes' arguments concern the ALJ's decisions at two different stages of the five-step sequential evaluation. *See* 20 C.F.R. § 404.1545. First, Ms. Rhodes challenges the ALJ's determination prior to the fourth step regarding determination of the RFC. Second, Ms. Rhodes challenges the determination at the fifth and final step of the sequential evaluation process, arguing the Commissioner failed to meet the burden of proof of establishing that Ms. Rhodes could perform the duties of the positions identified by the VE.

### a. Whether the RFC as to Ms. Rhodes' physical impairments is supported by substantial evidence

A claimant's RFC is the most she can do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ may formulate the RFC based not only on medical evidence, but also on other relevant, credible evidence of record, though some medical evidence is required. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citations omitted).

#### i. Medical opinion as to functional limitations

Ms. Rhodes argues that while the ALJ acknowledged her multiple "severe" physical impairments, there are no medical opinions of record as to the functional limitations stemming

from those physical impairments and that the ALJ thus had a duty to develop the record fully by obtaining a medical opinion rather than relying on his own medical expertise. Doc. 12, p. 30.

While an ALJ is not limited to considering only medical evidence, there must be at least "'some medical evidence of the claimant's ability to function the workplace.'" *Perks*, 687 F.3d at 1092 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "Some medical evidence, however, need not include any medical opinions that address a plaintiff's ability to function in the workplace. Instead, mild or unremarkable objective medical findings and other medical evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace." *Perfater v. Berryhill*, No. 4:17-CV-00722-NKL, 2018 WL 3037427, at *3 (W.D. Mo. June 19, 2018) (internal quotations omitted).

Here, it is undisputed that there is no medical opinion of record as to Ms. Rhodes' physical limitations. Therefore, the question is whether the medical evidence that does exist in the record is sufficient to support Ms. Rhodes' RFC.

The ALJ reviewed hundreds of pages of Ms. Rhodes' medical history from her treating and examining physicians. For example, the ALJ noted that in September 2015, Ms. Rhodes saw a neurologist for headaches. Tr. 24–25. She had stopped using Topiramate because she believed it caused her chest pain, but Excedrin was providing some relief. *Id*. At that appointment, the record noted that she was alert and oriented to person, place, and time; that her recent and remote memory were fair; that her speech and language functions were intact; and that she had full strength, intact sensation, and normal gait. Tr. 318–19. In December 2015, when Ms. Rhodes presented with having a continuous headache for the last month with sensitivity to light, sound, and movement, an examination also revealed that despite her apparent considerable pain, she

4

was alert and oriented to place and time, with full strength, and a gait that was "somewhat slow." Tr. 708. At a January 2016 appointment, Ms. Rhodes reported daily headaches, but an examination indicated no acute distress and noted she was alert, oriented to person, place, and date, and able to follow and perform multi-step commands. Tr. 733-737. Over the next year, Ms. Rhodes continued to present with migraine symptoms, and in addition to diagnosing migraines and prescribing treatment, the medical examination reveals similar results with respect to alertness, memory function, speech function, motor skills, and gait. *See, e.g.*, Tr. 964–74, 1308–13, 1383–85, 1406, 1416–17.

The ALJ also reviewed the effectiveness of her treatments. At her January 2016 appointment, Ms. Rhodes was given Botox injections, and she stated at her February 2016 appointment that she believed these were helpful. Tr. 740. She received the same injections again in April, Tr. 1408, and an occipital nerve block treatment in January 2017 which she also stated was helpful "80-90% for the last two months." Tr. 1109. The treatment was repeated in March 2017. *Id*.

In recounting the evidence, the ALJ emphasized the instances in which Ms. Rhodes stopped taking her medication, claimed her migraines were getting better and expressed desire to become pregnant, and received relief from treatment, as well as instances when examinations or diagnostic tests were "unremarkable." Tr. 24–25. The ALJ did, however, credit Ms. Rhodes' "persistent reports of problems" and note her sensitivity to bright lights and sounds. *Id*. Based on a review of the medical evidence presented, as well as Ms. Rhodes' testimony, the ALJ

concluded that an RFC with the light, postural, and environmental limitations for safety and trigger avoidance would be sufficient.

In addition, the ALJ considered Ms. Rhodes' other physical conditions, including her bladder pain, abdominal pain, and degenerative disc disease. Tr. 25–26. Reviewing the medical evidence documenting Ms. Rhodes' diagnoses and treatment, as well as Ms. Rhodes' own statements about the continued impact these had on her, the ALJ determined these conditions were largely being well-managed and therefore did not require additional limitations in the RFC beyond what was already included. *Id*.

The Court therefore cannot say that the ALJ's decision as to Ms. Rhodes' functional limitations stemming from her physical impairments was not supported by "some medical evidence." The ALJ expressly considered each physical impairment and based on the medical evidence presented as well as Ms. Rhodes' testimony, constructed an RFC reflecting the functional limitations the evidence suggested. The remaining physical limitations in the RFC correspond to Ms. Rhodes' testimony and function report about her own ability to walk, stand, bend, and climb stairs. Tr. 24. This is sufficient. *See Cox,* 495 F.3d at 620 (finding review of an examining physician's notes was sufficient medical evidence where they indicated that in spite of her continued depressive symptoms and remaining social avoidance, she was capable of superficial social contact, which "bear[s] directly on the extent of [plaintiff's] ability to function in a work environment"); *Davis v. Colvin*, No. 4:13-CV-00619-NKL, 2014 WL 3809362, at *2 (W.D. Mo. Aug. 1, 2014) (finding an RFC was supported by "some medical evidence" where the ALJ reviewed medical evidence including physician's diagnosis and treatment plan for plaintiff's low back pain and lumbar strain, plaintiff's compliance with the treatment plan, and an MRI that revealed no surgery was required). Thus, the RFC determination was based on "some

medical evidence," and a medical opinion directly addressing Ms. Rhodes' ability to function in the workplace was not required.

### ii. Failure to include a limitation for frequent migraine headaches

Ms. Rhodes argues the ALJ improperly concluded that there was insufficient evidence to corroborate the frequency and severity of her migraine headaches, and that the RFC should have accounted for both absence and incapacity due to headaches. Doc. 12, p. 33 (listing the twenty-one instances in the record when a medical provider documented Ms. Rhodes' complaints of headaches). She further argues reliance on the negative diagnostic testing was improper, because such testing cannot diagnose migraines and can only rule out other medical conditions as a cause of those symptoms. Doc. 12, p. 32.

The ALJ did not dispute that Ms. Rhodes had consistently experienced and complained of migraine pain. Rather, the ALJ determined that the statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence, and therefore an RFC imposing a limitation for absences due to migraines was not required. Tr. 27.

An RFC must include "only the impairments and limitations [the ALJ] found to be credible based on his evaluation of the entire record." *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). "Pain and mental limitations are a subjective experience, and in recognition of this fact, regulations require the ALJ to analyze the credibility of a plaintiff's subjective complaints of pain by assessing: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Sanders v. Colvin*, No. 12-01418-CV-W-REL, 2014 WL 700059, at *7 (W.D. Mo. Feb. 24, 2014) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "A claimant's subjective complaints may be discounted if there are

7

inconsistencies in the record as a whole . . . In rejecting a claimant's complaints of pain as not credible, we expect an ALJ to detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (internal quotation omitted).

The ALJ explicitly noted at the outset that the factors listed above were given "careful consideration." Tr. 23. Further, the ALJ specifically cited inconsistencies between Ms. Rhodes' statements about the intensity, persistence, and limiting effects of the migraines and the medical record that informed his decision.

The ALJ found that while treatment was ongoing, physical examinations and diagnostic imaging were generally normal. Tr. 27. *See Jones v. Colvin*, No. 6:15-CV-03336-NKL, 2016 WL 915290, at *8 (W.D. Mo. Mar. 7, 2016) ("Although diagnostic imaging and abnormal neurological examinations are not required to diagnose migraines, the absence of objective findings, in the context of the whole record, supports a conclusion that Jones' migraines were not as limiting as alleged.")

Further, the ALJ noted there were inconsistencies as to the effectiveness of treatment. While Ms. Rhodes indicated Botox injections had not helped, medical records indicated otherwise. Tr. 740 ("She [has] now received one round of Botox injections for chronic migraine from Dr. Bollu. She does feel that so far [] these have helped her."). Other evidence indicated the occipital nerve block treatment had been effective. Tr. 1109 ("[Ms. Rhodes] mentioned that she had bilateral occipital nerve blocks in January which helped her 80%-90% for the last 2 months, and she wants to repeat the same occipital nerve blocks as they helped her."). *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quoting *Roth v. Shalala*, 45 F.3d 279, 282

(8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

In addition, she told her physician in 2016 that her headaches had gotten better and she wished to discontinue treatment because she wanted to get pregnant. Tr. 929 ("She has a history of migraine[. S]he's currently on Topamax. She wants to get pregnant, her headache is better and the Topamax would be discontinued . . . She said her headache has improved after the tooth extraction . . . She wants to stop most of her medications before she gets pregnant.").

The ALJ thus determined that Ms. Rhodes' complaints were inconsistent based on the objective medical evidence, reported effectiveness of treatment, and desire to stop treatment in order to become pregnant, and concluded that while "the evidence as to the claimant's migraines noted continual reports of problems . . . there was little to corroborate the frequency. The evidence did not support an inability to get out of bed most days, as alleged." Tr. 27. This provides substantial evidence to discount Ms. Rhodes' statements as to the frequency of migraines. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir.1996) (finding that an ALJ is entitled to discount claimant's complaints of pain where, among other factors, there was failure to pursue regular medical treatment and where complaints were inconsistent with objective medical evidence); *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (upholding an ALJ's discounting of claimant's complaints about intensity, persistence, and limiting effects, because "[t]he ALJ did not dispute that Hensley experienced symptoms, but found those symptoms not to be as limiting as Hensley claimed because, among other reasons, no treating physician had opined that he was disabled; he did not follow the recommended course of treatment for PTSD;

his impairments were controlled by medication and treatment; and he performed 'a wide range of daily activities.'").

Further, despite the ALJ's doubts as to Ms. Rhodes' inability to get out of bed, he nevertheless included limitations in the RFC to account for potential triggers: "She cannot perform jobs in bright light, further defined as stage lighting, strobe lighting, paint booth lighting, and bright sunlight. She must avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, level 5 noise, and vibrations, further defining vibrations as performing jobs such as operating jackhammers and other equipment where the operator is significantly vibrated. She must avoid all exposure to hazards of heights and machinery." Tr. 23. The ALJ explained that an RFC "at the light level with postural and environmental limitations for safety and trigger avoidance is appropriate." Tr. 25.

The ALJ properly limited the RFC determination "to only the impairments and limitations he found to be credible based on his evaluation of the entire record." *McGeorge*, 321 at 769. Therefore, the ALJ's determination that Ms. Rhodes' migraines would not prevent her from working but rather could be accommodated through the specified limitations within the RFC was supported by substantial evidence.

### iii. Failure to include restroom use limitation

Ms. Rhodes also argues the ALJ did not consider or account for the limitation that she needs to use the restroom every thirty minutes in the RFC. The ALJ did consider Ms. Rhodes' statements that she experiences bladder pain resulting in frequent urination, abdominal pain, and sphincter of Oddi dysfunction in his decision. *See* Tr. 25, 27. However, the ALJ determined the medical evidence demonstrated that while she had "early bladder pain with frequent urination,"

10

that "treatment tailed off in 2016, with indication that it was medically controlled," and that her sphincter of Oddi dysfunction was "significantly improved with treatment." Tr. 27.

As noted, "'[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *Brown*, 390 F.3d at 540 (quoting *Roth*, 45 F.3d at 282). The record reflects that the combination of medications and Botox had effectively controlled Ms. Rhodes' bladder pain, Tr. 1401, 1411, 1420, that Enablex and other medications may have eased the frequent urination, Tr. 314–15, 1411, 1415, that a sphincteroplasty significantly improved her Oddi dysfunction, Tr. 1206, and that her irritable bowel syndrome was no longer an issue, Tr. 50–51.

Ms. Rhodes is correct that there is also evidence in the record that her frequent bathroom use is ongoing. Tr. 52, 314, 1411, 1431. However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews,* 791 F.3d at 928 (8th Cir. 2015) (quotation marks and citation omitted). Therefore, because substantial evidence supports the ALJ's conclusion that a limitation based on Ms. Rhodes' bathroom usage was not warranted, the Court will not disturb this finding.

### iv. Failure to assess RFC on function-by-function basis before assessing the exertional level

Ms. Rhodes argues that the ALJ erroneously assessed the exertional level when he concluded that she was capable of engaging in light work before making a function-by-function

assessment in accordance with Social Security Ruling 96-8p.[1]  Ms. Rhodes cites *Pfitzer v. Apfel*, a case in which the Eighth Circuit held remand was required because the RFC only described "light work," the "fact findings . . . [were] incomplete or nonexistent," and the ALJ's determination "articulated only the outermost contours of [the claimant's] residual functional capacity" such that a reviewing court could not tell whether the ALJ had found any physical limitations.  169 F.3d 566, 568–69 (8th Cir. 1999).

The ALJ's decision here is distinguishable.  While the ruling does state that Ms. Rhodes can perform "light work as defined in 20 C.F.R. 416.967(b)" before assessing Ms. Rhodes' functional limitations, the RFC goes on to provides that such definition of "light work" is limited by certain exceptions, and the ALJ subsequently details the basis for each of those exceptions.  This is sufficient.  *See Thorndyke v. Colvin*, No. 14–03396–MDH, 2015 WL 5522513, at *3 (W.D. Mo. Sept. 18, 2015) ("[T]he ALJ's reference to Plaintiff's 'light work' is subsequently supported by the ALJ's additional discussion of the evidence used to determine the RFC.").  "[E]ven if the ALJ did not conduct the analysis in the proper order, as set out in Social Security Ruling 96-8p, such 'deficiency in opinion-writing' also does not warrant reversal."  S*eitz v. Colvin*, No. 5:15-CV-06151-NKL, 2016 WL 3920463, at *8 (W.D. Mo. July 18, 2016) (finding that where an ALJ first stated a claimant was able to perform "light work" but then provided additional limitations based on an assessment of claimant's functional abilities, this was not reversible error).

---

[1] Social Security Ruling 96-8p(4) provides: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 at *1.

Therefore, there is substantial evidence to support the ALJ's RFC that is not affected by the ALJ's stating the exertional level of "light work" before discussing Ms. Rhodes' function-by-function limitations.

### b. Whether the RFC as to Ms. Rhodes' mental impairments is supported by substantial evidence

Ms. Rhodes argues the ALJ's determination as to her mental impairments was not supported by substantial evidence because the ALJ gave "significant" weight to the opinion of Dr. Charles Watson, Psy. D., a non-examining State agency psychological consultant who reviewed Ms. Rhodes' file in January 2016, and that opinion was years old and therefore did not consider all the pertinent evidence.

In assessing Ms. Rhodes' mental impairments, the ALJ reviewed Ms. Rhodes' testimony about her symptoms and limitations as well as her reported functioning, medical evidence from prior treatment, and the opinion of non-treating, state agency psychological consultant Dr. Watson. Tr. 24–28. The ALJ found Ms. Rhodes' alleged symptoms and limitations to be inconsistent with the medical and opinion evidence. Mental status examinations throughout the period "did not show any significant issues aside from an occasional sad mood" and "noted the claimant's reports that her anxiety was well-managed." Tr. 27. The ALJ further noted that Ms. Rhodes was able to engage in personal care, help her family with the dishes, watch TV most of the day, go out alone, shop in stores on rare occasions, and spend time with others. Tr. 27. Finally, the ALJ reviewed Dr. Watson's report that the mental impairments would result in "mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace." Tr. 27. Dr. Watson further concluded Ms. Rhodes could "acquire and retain simple instructions and sustain concentration and persistence with simple repetitive tasks" and "adapt to changes in setting that

did not require frequent public contact or close interaction with others in the workplace." Tr. 27. Finding this opinion to be consistent with the medical evidence and Ms. Rhodes' reported functioning, the ALJ gave Dr. Watson's opinion "significant weight."

"The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). However this is generally only a basis for reversal where there is credible, conflicting evidence or a lack of developed record altogether. *See, e.g.*, *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work."); *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) ("There is no other evidence in the record to support the ALJ's residual-functional-capacity finding besides the non-treating physician's assessment. This assessment alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician."); *Brown v. Colvin*, No. 4:14-CV-00288-NKL, 2014 WL 6750041, at *3 (W.D. Mo. Dec. 1, 2014) (finding a non-treating, non-examining physician's RFC assessment form could not constitute substantial evidence where it was contradicted by the claimant's testimony and inconsistent medical records).

Here, the medical evidence indicates that while Ms. Rhodes had documented reports of bipolar disorder, depression, anxiety, and mood swings, mental status examinations reported that these mental impairments were well-managed with treatment or medication. Tr. 26–27. Though Dr. Watson's report occurred over eighteen months prior to the hearing, the ALJ found it was consistent with the entirety of the medical evidence throughout the period. *Id.* Social Security

14

regulations deem medical consultants like Dr. Watson "highly qualified and experts in Social Security disability evaluation," and ALJs "must consider" their findings as medical opinion evidence. 20 C.F.R. § 404.1513a(b)(1). Thus, the ALJ was entitled to rely on Dr. Watson's opinion, to the extent that it was consistent with other evidence, in conjunction with the other evidence considered. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (finding "[t]he state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating Mabry's RFC."). Therefore, the ALJ's RFC as to Ms. Rhodes' mental impairments is supported by substantial evidence.

### c. Whether there was substantial evidence that Ms. Rhodes can perform the duties of a small products assembler or electrical accessory assembler

At the fifth stage of the evaluation, the Commissioner bore the burden of proving "first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). VEs are considered reliable sources of occupational evidence, but if there is an "unrecognized, unresolved, and unexplained conflict between the VE's testimony and the DOT, the VE's testimony cannot provide substantial evidence to support the ALJ's disability determination and reversal is necessary." *McPheeters v. Astrue*, No. 4:12–0137–DGK–SSA, 2013 WL 523674, at *2 (W.D. Mo. Feb. 12, 2013). Ms. Rhodes argues that substantial evidence does not support the ALJ's determination at the fifth stage, because there was not proof that the limitations on contact with others, non-detailed instructions, and exposure to hazards of machinery were compatible with the representative jobs the VE identified.

### i. Limitation on contact with supervisors, coworkers, and the public

Ms. Rhodes argues that the VE's testimony that Ms. Rhodes could perform the job of small products assembler was inconsistent with her RFC, which requires "contact with others, including the public" to be "infrequent."

However, the RFC does not so strictly limit Ms. Rhodes' exposure to others. Rather, the RFC provides "[s]he can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others, including the public, is infrequent." The small products assembler position "[f]requently works at bench as member of an assembly group assembling one or two specific parts and passing unit to another worker." DOT 706.684-022, 1991 WL 679050 (4th Ed. Rev. 1991). This type of assembly group, wherein the contact consists of "passing unit to another worker" seems to be precisely the type of "task-oriented setting" in which the ALJ found Ms. Rhodes could "respond appropriately to supervisors and coworkers." *See Guadagno v. Comm'r of Soc. Sec. Admin.*, No. CIV-18-095-KEW, 2019 WL 4803227, at *6 (Sept. 30, 2019) (finding assembly group work required by a small products assembler "does not appear to require the type of frequent 'group' exposure to co-workers suggested by Claimant," in part because the DOT description also provides that the level of "'Taking Instructions – Helping' involving people [and] interaction with people is noted to be 'not significant.'").

Therefore, because there was no conflict between the vocational expert's testimony and the DOT, substantial evidence supports the ALJ's reliance on this testimony.

### ii. Limitation on understanding, remembering, and carrying out simple instructions and non-detailed tasks

Ms. Rhodes further argues that the RFC is inconsistent with both jobs identified by the VE, because they require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT 706.684-022, 1991 WL 679050;

729.687-010, 1991 WL 679733 (4th Ed. Rev. 1991). The RFC states that Ms. Rhodes "can understand, remember, and carry out simple instructions and non-detailed tasks, further defined as SVP 2 work and below." Tr. 23.

The RFC and the DOT position requirements do not conflict. The DOT descriptions describe the detail level of *instructions*, whereas the RFC's restriction limits the detail level of *tasks*. Further, the RFC provides that Ms. Rhodes "can understand, remember, and carry out simple instructions." This fairly corresponds to "detailed but uninvolved written or oral instructions" required by the positions. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) ("There is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate."). Therefore, because there was no conflict between the vocational expert's testimony and the DOT, substantial evidence supports the ALJ's reliance on this testimony.

### iii. Limitation on exposure to hazards of heights and machinery

The ALJ included the environmental limitation that Ms. Rhodes must avoid "all exposure to hazards of heights and machinery." Tr. 23. Ms. Rhodes argues that the jobs of small products assembler and electrical accessory assembler each require exposure to machinery to some degree, and this conflict was not recognized or resolved by the ALJ.

However, the RFC does not prohibit Ms. Rhodes from exposure to all machinery but rather limits her exposure to the "hazards of . . . machinery." Tr. 23. "The 'hazards' defined in the [Selected Characteristics of Occupations Defined (SCO)] . . . include: moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places;

17

exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals."[2] Social Security Ruling 96-9p, 1996 WL 374185. Both small products assembler and electrical accessory assembler descriptions provide that proximity to any of these hazards, including moving mechanical parts, is "Not Present – Activity or condition does not exist." Therefore, even though the positions may include exposure to some machinery, they do not include exposure to the "hazards . . . of machinery," and are thus not in conflict with the RFC. *See Cranfill v. Colvin*, No. 1:10CV925, 2013 WL 1736597, at *8 (M.D.N.C. Apr. 9, 2013) (rejecting the argument that the positions of small products assembler and electrical accessory assembler conflicted with an RFC that prohibited "no hazardous equipment" because the job descriptions did not indicate that any of the hazards set forth in SSR 96-p were present.); *Malgra v. Astrue*, No. ED CV 11–0724–SP, 2012 WL 443741, *6 (C.D.Cal. Feb. 10, 2012) (finding that "contrary to plaintiffs contention, there is no inconsistency between the DOT and plaintiff's RFC precluding him from working around 'hazardous' machinery'" where the job in question "does not require work around" the hazards described in SSR 96–9p); *Norwood v. Astrue*, No. CV 09–3996–RC, 2010 WL 2509358, *6 (C.D. Cal. June 17, 2010) ("[T]here is a significant difference between machinery and 'hazardous machinery,' which refers to moving mechanical parts, of equipment, tools, or machinery [and] [s]ince neither the 'assembler' job nor the 'packer' job requires exposure to 'hazardous machinery,' the failure to include [a] limitation precluding 'concentrated exposure to hazards' in the hypothetical question to the [VE] was, at most, harmless error.") (internal citations omitted).

---

[2] *See Moore v. Colvin*, 769 F.3d 987, 989, n. 2 (8th Cir. 2014) ("Social Security Ruling 004–p dictates that '[i]n making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.'").

Because there was no conflict between the vocational expert's testimony and the DOT, substantial evidence supports the ALJ's reliance on this testimony.

IV. **CONCLUSION**

For the reasons discussed above, the ALJ's decision is AFFIRMED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 31, 2019  
Jefferson City, Missouri